IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–00335–MDB

WHITNEY PORTER, M.A.,

    Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate,

    Defendant.

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment Pursuant to F.R.C.P. 56. (["Motion"], Doc. No. 48.) Plaintiff filed a Response to the Motion to which Defendant has replied. (["Response"], Doc. No. 51; ["Reply"], Doc. No. 54.) After considering the pleadings, the evidence submitted, and the applicable law, the Motion for Summary Judgment is **GRANTED**.

### STATEMENT OF THE CASE

Plaintiff Whitney Porter brings this employment discrimination lawsuit against the Regents of the University of Colorado ["the Regents"]. At this stage, Plaintiff's remaining claims are for retaliation and a hostile work environment on the basis of gender, and retaliation under Title VII of the Civil Rights Act of 1964, as amended ["Title VII"], 42 U.S.C. §§ 2000(e) *et seq*.

**I.**    **Plaintiff's Evidence Opposing Summary Judgment**

At the outset, the Court notes the Statement of Additional Disputed Material Facts in Plaintiff's Response includes many statements, claims, and allegations unsupported in the record by anything other than her own affidavit. (*See* Doc. No. 51 at ¶¶ 3, 5–11, 13–15, 19, 21, 23–28, 30–32, 34, 39–40, 44–47.) As Defendant notes, many of these statements are essentially imported from Plaintiff's affidavit and/or simply parrot her Complaint. (*Compare, e.g.*, *id.* at ¶ 35 ("Plaintiff's 'below expectations' rating was upheld, clearly in furtherance of Dr. Reddy's agenda to substantiate her termination."), *with* Doc. No. 51-1 at ¶ 12(a) ("Nevertheless, my 'below expectations' rating was upheld, clearly in furtherance of Dr. Reddy's agenda to substantiate my termination."). Indeed, certain statements in the Response accidentally slip from the third person to the first person, suggesting Plaintiff's counsel mistakenly failed to change those sections to third person after lifting the text directly from the affidavit. (*See* Doc. No. 51 at ¶ 30, 51.) In its analysis below, the Court notes the statements, but does so in the context of well settled law that self-serving affidavit statements, standing alone, are insufficient to create a genuine dispute as to any material fact *See Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991) ("[C]onclusory and self-serving affidavits are not sufficient [to create an issue of material fact]."); *Salguero v. City of Clovis,* 366 F.3d 1168, 1177 n. 4 (10th Cir. 2004) (stating assertions in affidavit that were not supported in the record by corroborating evidence are insufficient to create a genuine question of material fact precluding summary judgment); *Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1200 (10th Cir. 2006) (stating at summary judgment, "statements of mere belief in an affidavit must be disregarded" (internal quotation omitted)); *see also Volker v. T-Mobile USA, Inc.*, No. CIV.A. 04-CV02645WDM, 2007 WL 951793, at *3 (D. Colo. Mar. 28, 2007) ("[Plaintiff's] evidence is insufficient to create a genuine issue for trial. [Plaintiff's]

statement of additional facts in her response brief is taken almost verbatim from her affidavit and, with few exceptions, rests on no other evidence. This, if nothing else, demonstrates the self-serving nature of her affidavit.").

## II.     Material Facts

The following facts are undisputed unless otherwise noted. In 2007, Plaintiff, a woman, was hired by Defendant as an Administrative Assistant II at the University of Colorado—Colorado Springs ("UCCS"). (Doc. No. 48-1 at 1.) Plaintiff was promoted to Senior Academic Advisor in 2011. (*Id.* at 2–4.) In 2014, Plaintiff was offered and accepted a position as the Assistant Director of Graduate Programs in the UCCS College of Business. (*Id.* at 5–7.) At the time of Plaintiff's hiring to the College of Business, Dr. Venkateshwar Reddy was the College's Dean. (*Id.* at 7.)

In July 2015, Plaintiff emailed two of Dr. Reddy's College of Business subordinates, Cathy Claiborne and Windy Adoretti, as well as the HR department, complaining that she felt "a targeted attempt to make [her] feel uncomfortable in [her] position." (Doc. No. 51-2 at 2.) Plaintiff's email specifically focused on her belief she was the target of "gossip" and "accusations" regarding her use of a sick day on June 12, 2015, for migraine headaches. (*Id.*) Plaintiff was required to present a doctor's note to substantiate the use of a sick day. (*Id.*; *see id.* at 3–4.) Plaintiff said, "over the past few months, the atmosphere and job surroundings have become severely uncomfortable with high scrutiny." (Doc. No. 51-2 at 2.) Plaintiff's email did not expressly indicate that her gender may be related to the scrutiny. (*Id.*)

In February 2017, Plaintiff received a "Below Expectations" job performance evaluation for the period of February 2016 to January 2017. (*Id.* at 8–10.) Plaintiff was also given a

"Performance Improvement Plan" in conjunction with her evaluation. (*Id.*) Plaintiff reported being told "that failure to meet the PIP expectations would result in termination at the end of the probationary period as [she] would not 'fit the business culture.'" (Doc. No. 51-5 at 2.) This was the first time Plaintiff had not met or exceeded her expectations during a given evaluation period. (Doc. No. 51-3.) Additionally, Plaintiff claims that since the poor performance review in February 2017, she has not received any other poor performance reviews. (*Id.*) She also notes she was nominated for "Advisor of the Year" in 2016. (Doc. No. 51-1 at ¶ 31; *see also* Doc. No. 51-4 (showing various emails in which co-workers compliment Plaintiff's job performance).)

Plaintiff appealed the "Below Expectations" evaluation and PIP in a letter sent to "Dr. Claiborne and Dr. Block." (Doc. No. 51-5.) She challenged various aspects of her evaluation and highlighted the work she had done for the College of Business. (*See generally* Doc. No. 51-5; *see also* Doc. No. 51 at ¶ 33 (contending Plaintiff "entirely debunk[ed] each and every erroneous contention made against her").) Plaintiff did not include any statements illustrating a belief that her gender was related to the evaluation or otherwise related to any issues in her work environment. (Doc. No. 51-5.) Her appeal was denied. (Doc. No. 51-1 ¶¶ 37–38; Doc. No. 48 at 7.)

Plaintiff resigned from the College of Business in May 2017. (Doc. No. 48-1 at 11.) Later that month, Plaintiff accepted a job in the UCCS College of Education as a Professional Temporary Faculty Liaison Associate, where she was paid $20 per hour. (*Id.* at 12–14.) Plaintiff's offer letter indicated "final approval by the Chancellor of [UCCS]," which, by that time, was Dr. Reddy. (*Id.*; *see* Doc. No. 51-1 ¶ 36 (saying Dr. Reddy became UCCS Chancellor in February 2017).) In September 2017, Plaintiff accepted a permanent position in the College of

4

Education as an Academic Specialist, earning $42,000 per year. (*Id.* at 15–17.) Chancellor Reddy approved plaintiff's hiring. (*Id.*) In November 2018, Plaintiff was promoted to Senior Academic Specialist, making $48,415 per year—which Dr. Reddy also approved. (*Id.* at 18–19.)

On October 18, 2019, Plaintiff applied for a position as a Graduation and Academic Services Coordinator ("GASC") in the UCCS Registrar's Office. (Doc. No. 48-2.) A month earlier, on September 13, 2019, when Plaintiff inquired about the position's salary, she was told it was "only ... approved at 49k" but she could try to negotiate for more. (Doc. No. 48-3.) In December 2019, Plaintiff received a tentative verbal offer for the GASC position at $52,000 per year. (Doc. No. 48-5.) The tentative offer came from the Registrar's Office, but because the salary was higher than what was reflected in the job posting, finalization of the offer required approval from the Vice Chancellor of Administration and Finance, Chuck Litchfield, and Chancellor Reddy. (Doc. No. 48-6.) Vice Chancellor Litchfield denied the salary increase. (*Id.*; Doc. No. 48-7 (Vice Chancellor Litchfield saying he would not support a salary over the "mid[point] for this position," which was $51,000).) In an email, Vice Chancellor Litchfield said Chancellor Reddy was not notified of the issue.[1] (Doc. No. 48-7 ("I did not discuss this personnel issue with [Chancellor Reddy] because this is my responsibility first.")). Eventually, Plaintiff was offered the GASC position at $49,000, and she declined. (Doc. No. 48-8.)

In October 2020, a new search committee was formed to fill the still-vacant GASC position. (Doc. No. 48-9.) Plaintiff re-applied for the GASC position on October 13, 2020, and

---

[1] Plaintiff contends that Chancellor Reddy was indeed notified of the request, and she argues that Vice Chancellor Litchfield's denial was based on Chancellor Reddy's alleged animus toward Plaintiff. (Doc. No. 51 at 4.) However, Plaintiff does not cite any evidence to support these claims.

was interviewed by the search committee on November 3, 2020. (Doc. No. 48-10 at ¶¶ 5–6; Doc. No. 48-11.) Plaintiff was not selected for the position. Deborah O'Conner, the UCCS Ethics and Compliance Director and chair of the GASC search committee, submitted an affidavit saying Plaintiff made an inappropriate remark during the interview[2] and that "at least two other candidates stood out to the search committee" (Doc. No. 48-10 at ¶¶ 9–11.) Robyn Firth was hired to fill the position on December 2, 2020. (Doc. No. 48-10 at ¶ 12.)

After being notified she was not selected for the GASC position, Plaintiff emailed Ms. O'Conner seeking "constructive feedback" on her interview. (Doc. No. 51-6.) In response, Ms. O'Conner called Plaintiff via Microsoft Teams. In her affidavit, Plaintiff says Ms. O'Conner told her there were "so many candidates," and she "was not the most experienced of the bunch." (Doc. No. 51-1 at ¶ 63.) Plaintiff says, and Defendant seems to agree, that Ms. O'Conner did not mention anything regarding Plaintiff's allegedly offensive remark during the call. (*Id. But see* Doc. No. 48 at 9 (saying, "Ms. O'Conner's additional detail about why Plaintiff was not the most impressive candidate (the offensive remark), contained in her affidavit, is [not] inconsistent").)

Plaintiff filed a Charge of Discrimination with the EEOC on February 9, 2021. (Doc. No. 27 at 5, ¶ 4.) During the spring of 2022, Plaintiff accepted a promotion to Senior Academic and Data Specialist in the College of Education (Doc. No. 48-1 at 20–21.) Plaintiff's starting salary was $58,000. (*Id.*) The offer was approved by Chancellor Reddy. (*Id.*)

### III.    Procedural History

---

[2] Plaintiff refutes this assertion, citing her own affidavit. (Doc. No. 51 at 5 (citing 51-1).)

Plaintiff initiated this case on February 4, 2022, asserting five claims: 1) gender-based discrimination and hostile work environment in violation of Title VII of the Civil Rights Act; 2) retaliation in violation of Title VII of the Civil Rights Act; 3) a Fourth Amendment due process violation under 28 U.S.C. § 1983; 4) a Fourteenth Amendment equal protection violation under 42 U.S.C. § 1983; and 5) First Amendment retaliation under 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff brought her claims against the Regents and Dr. Reddy.

On March 28, 2023, the Court granted Defendants' Motion to Dismiss in part, finding Plaintiff could only proceed with her retaliation claim, insofar as it concerned the alleged 2020 failure to hire, and her gender and retaliation-based hostile work environment claim against the Regents. (Doc. No. 44.) The Court determined that, while many of Plaintiff's allegations of discrimination were untimely, her 2020 failure to hire claim was both timely and sufficiently pled to withstand the dismissal motion. (*Id.* at 25–28.) It further reasoned that Plaintiff's hostile work environment claim was timely because the 2020 failure to hire allegation was adequately connected as a continuation of her hostile work environment allegations. (*Id.* at 14–17 (finding that Plaintiff's 2020 failure to hire retaliation claim was "adequately connected" to her hostile work environment allegations because "there is a uniquely identifiable throughline [between the allegations]: the alleged hostility from [Dr.] Reddy"). The Court dismissed Plaintiff's Fourth Amendment claim as untimely under the relevant statute of limitations and found her Fourteenth and First Amendment-related allegations failed to state a claim under Fed. R. Civ. P. 12(b)(6). (*Id.* at 19–20, 29–32.)

## LEGAL STANDARD

7

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the Court to make unreasonable inferences in favor of the nonmoving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

### I.   Plaintiff's 2020 Failure to Hire Retaliation Claim

In the absence of direct evidence of retaliatory intent, a retaliation claim is governed by the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a prima facie case for retaliation, at which point the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge and then back to the plaintiff to show that the stated reason is pretextual. *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004).

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross Blue Shield of Kan.,*

9

*Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Here, Defendant contends there is "no evidence supporting element (1)— that Plaintiff engaged in protected opposition to Discrimination." (Doc. No. 48 at 7–8.) Or, alternatively, there is no evidence of element (3)—a "causal connection" between the alleged protected activity and the 2020 failure to hire claim. (*Id.* at 9–10.)

"[I]n order to engage in protected opposition to discrimination, an employee must oppose an employment practice made unlawful by Title VII." *Dean v. Computer Scis. Corp.*, 384 F. App'x 831, 838 (10th Cir. 2010); *see Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188–89 (10th Cir. 2002) ("The purpose of § 2000e–3(a) is to let employees feel free to express condemnation of discrimination that violates Title VII. That purpose is hardly served by imposing sanctions upon employers who take action against employees who never communicate their concern about unlawful discrimination"). "Although no magic words are required, to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mght. Co.*, 523 F.3d 1187, 1202–03 (10th Cir. 2008). "General complaints about company management and one's own negative performance evaluation will not suffice." *Id.*; *see Anderson v. Acad. Sch. Dist.* 20, 122 Fed.Appx. 912, 916 (10th Cir. 2004) (unpublished) ("[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim.").

The record reflects that Plaintiff twice engaged HR and her superiors with complaints. First, in July 2015, when Plaintiff emailed two of Dr. Reddy's College of Business subordinates,

Cathy Claiborne and Windy Adoretti, as well as the HR department, regarding her use of a sick day (the "Sick Day Email"). (Doc. No. 51-2 at 2.) And second, in appealing her February 2017 "below average" performance review ("Performance Appeal"). (Doc. No. 51-5.)

The Sick Day Email was sent a few weeks after Ms. Adoretti "challenged" Plaintiff's use of a sick day. (*Id.* at 2–3 (showing an email from Ms. Adoretti to Plaintiff saying "[w]e need to talk about this" in reference to Plaintiff's sick day).) Along with her email, Plaintiff provided a doctor's note regarding her treatment for migraine headaches "to clarify my situation and to eliminate any possible reprisals and in the hopes of facilitating a positive environment." (*Id.* at 2.) Plaintiff also made references to feeling "uncomfortable," dealing with "high scrutiny," being the target of gossip, and feeling there was a "vendetta" against her. (*Id.* at 2.) She reported feeling "a targeted attempt to make [her] feel uncomfortable in [her] position." (*Id.*)

Sending the Sick Day Email does not constitute protected activity. First, the email does not expressly allege a Title VII violation—namely, gender discrimination. Moreover, while there are vague references to a "vendetta" or targeted attempts to make Plaintiff feel uncomfortable, there are no implicit allegations or undertones connecting those references to Plaintiff's gender or any other protected class she may be a part of. Instead, the allegations in the email sound in "[g]eneral harassment," which is not a basis for a Title VII violation. *Bolden v. PRC Inc.* 43 F. 3d 545, 551 (10th Cir. 1994). Indeed, even Plaintiff's own affidavit fails to claim the email was intended as a report of a potential Title VII violation or gender discrimination. (Doc. No. 51–1 at ¶ 14.) Because the Sick Day Email does not "convey ... [Plaintiff's] concern that [her] employer has engaged in a practice made unlawful by [Title VII]," it cannot be the protected activity that forms the basis of her prima facie case of retaliation. *Hinds*, 523 F.3d at 1202–03.

11

Likewise, the Performance Appeal was not protected opposition to discrimination. (*See* Doc. No. 51-5.) The Performance Appeal exclusively addresses the contents of her review and performance improvement plan—presenting arguments as to why the performance review was incorrect and confusing. (*Id.*) But it does not explicitly or implicitly identify any purported Title VII violations, nor does her affidavit describe it as such. (*See* Doc. No. 51-5 at ¶¶ 35, 37, 38.)

Plaintiff's affidavit makes additional vague reference to other HR complaints:

- "As a result of the repeated hostility and harassment, I reported my concerns to UCCS's human resources department ("HR") on several occasions." (Doc. No. 51-1 at ¶ 13.)

- "However, these individuals, including HR, failed to address my complaints and ultimately, I was told that I should leave my position at the UCCS College of Business." (*Id.* at ¶ 15.)

- "I again specifically reported to HR regarding the issues I had faced in my then-current position, through email correspondence and during a follow-up in-person meeting with HR in March of 2017, which is when I was advised that I should leave my current position." (*Id.* at ¶ 32.)

- "Specifically, in February of 2017, I spoke with a representative from the College of Business's HR department, during which I again discussed the harassment that had ensured and my ability to appeal my "Below Expectations" review, which was entirely baseless." (*Id.* at ¶ 34.)

But these statements are not supported by any emails, deposition testimony, or other evidence tending to corroborate them. As the Court noted above, self-serving and wholly unsupported statements in an affidavit are insufficient to create a material fact dispute.[3] *See*

---

[3] Further, even assuming these affidavit statements are true, the Court notes that none of them actually say Plaintiff reported gender-based discrimination or otherwise intended to engage in protected activity. Instead, they refer generally to complaints of "hostility and harassment," and "issues." (Doc. No. 51-1 at ¶¶ 13, 32.)

12

*supra* at 1–3. Thus, the Court agrees with Defendant that the record lacks evidence of protected activity, and therefore Defendant is entitled to summary judgment on this claim.[4]

## II.  Plaintiff's Hostile Work Environment Claim

Defendant next argues Plaintiff's hostile work environment claim fails because it is time-barred or, alternatively, because the record lacks evidence to support the claim. (Doc. No. 48 at 10–14.)

"In Colorado, for a charge of discrimination to be timely, it must be filed with the appropriate agency within 300 days of the complained-of conduct." *Christie v. Loomis Armored US, Inc.*, No. 10-CV-02011-WJM-KMT, 2013 WL 3381268, at *3 (D. Colo. July 8, 2013) (citing *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007)). However, under what is known as the continuing violation doctrine, "in cases involving a hostile work environment, the Court can consider acts that occurred outside of the 300-day limitations window[.]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002*)*. "[S]uch claims 'cannot be said to occur on any particular day, and instead usually involve a pattern of acts that aren't actionable on their own but give rise to legal violation only when addressed in their totality.'" *Christie*, 2013 WL 3381268, at *3 (D. Colo. July 8, 2013) (quoting *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir.2011) (internal quotations omitted)). "In order for the charge to be timely, the employee need only file a charge within … 300 days of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 116 (internal quotation marks

---

[4] The Court also notes that even if it found Plaintiff engaged in protected activity at the College of Business in 2015–17, the record lacks evidence that such activity had a "causal connection" to the alleged 2020 failure to hire for the Registrar's Office position—more specifically, that Chancellor Reddy impacted Plaintiff's candidacy. *See infra* at 13–15.

13

omitted). In other words, an employee asserting a hostile work environment claim may maintain allegations that are over 300 days old at the time of her EEOC complaint so long as the most recent hostile action took place within the 300-day limitation period. *See Morgan*, 536 U.S. at 122 ("A charge alleging a hostile work environment claim … will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.").

At the motion to dismiss stage, the Court found Plaintiff's hostile work environment claim was not time-barred because although the vast majority of her hostile work environment allegations occurred during her time at the College of Business (which concluded in 2017), Plaintiff sufficiently alleged that her 2020 failure to hire claim was a continuation of her hostile work environment claim. (Doc. No. 44 at 14–17.) The crux of the Court's ruling was that Dr. Reddy was allegedly involved at each stage of Plaintiff's allegations. Said another way, Dr. Reddy's alleged involvement in Plaintiff's 2020 failure to hire claim saved her hostile work environment claim from being time-barred at the motion to dismiss stage.

But at this stage, the record lacks any evidence that Dr. Reddy (then UCCS Chancellor) was involved in Plaintiff's 2020 candidacy. While Plaintiff's Response argues that a "reasonable jury could ... conclude that in 2020, the search committee relied on Dr. Reddy's input to refuse to hire Plaintiff [in retaliation for her protected activity]," this contention is entirely unsupported. (Doc. No. 51 at 14.) For example, there is no evidence Chancellor Reddy was on the search committee (*see* Doc. No. 48-9 (showing an email chain between members of the search committee; 48–10 at ¶ 6 (the affidavit of Deborah O'Conner, the head of the 2020 search committee).) Likewise, there is no evidence that Chancellor Reddy offered guidance or made

14

demands to the committee regarding Plaintiff's candidacy.[5] Plaintiff, without purporting to have personal knowledge, simply says this was the case. This is insufficient to survive the Motion.[6]

Accordingly, Plaintiff's hostile work environment claim is time-barred,[7] and Defendant is entitled to summary judgment on this claim.

### III. Plaintiff's Request for Fed. R. Civ. P. 56(d) Relief

Plaintiff requests that the Court "defer considering this motion until such time that depositions are complete." (Doc. No. 51 at 19–20.) The Court denies this request.

---

[5] Similarly, to the extent Plaintiff ties the 2019 interview process to the 2020 failure to hire, there is no evidence Chancellor Reddy had a role in UCCS's decision to deny the Registrar's Office request to pay Plaintiff $52,000 instead of the posted $49,000. (*See* Doc. No. 48-6 (showing Vice Chancellor Litchfield denying the request and saying he "did not discuss" the issue with Chancellor Reddy).) Additionally, the evidence demonstrates the 2019 and 2020 search committees were made up of different people. (*Compare* Doc. No. 48-4, *with* Doc. No. 48–9.)

[6] The record also reflects that Dr. Reddy approved Plaintiff's hiring and promotions at the College of Education. (*See* Doc. No. 48-1 at 12–14, 15–19.) These were arguably "intervening actions" cutting off Plaintiff's College of Business hostile work environment allegations from her 2020 failure to hire allegation. *See Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016) ("[A]n employer will not be liable when there is "no relation" between the pre- and post-limitations acts, or if 'for some other reason, such as certain intervening action by the employer,' the later acts are no longer part of the same hostile work environment claim." (quoting *Morgan*, 536 U.S. at 118)). Though the Court declines to ultimately decide this issue, it at least cuts against Plaintiff's position.

[7] Even if Plaintiff's hostile work environment claim was timely, the lack of evidence concerning "severe or pervasive" conduct would also be grounds to grant Defendant's Motion. *See Taylor v. Kaiser Found. Health Plan of Colorado*, 640 F. Supp. 3d 1008, 1024 (D. Colo. 2022) ("To survive summary judgment on a claim alleging a [ ] hostile work environment, 'a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004))).

Discovery closed on May 26, 2023. Thus, to the extent Plaintiff seeks more time to conduct discovery generally, she must show good cause to amend the Scheduling Order under Fed. R. Civ. P. 16(b)(4). *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "To demonstrate good cause pursuant to Rule 16, the moving party must ... 'provide an adequate explanation for any delay.'" *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, LLC, 300 F.R.D. 678, 681 (D. Colo. 2014) (quoting *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009)). The Court does not see good cause. The discovery cut-off was twice extended at Plaintiff's request. (See Doc. Nos. 41; 43.) Ultimately discovery lasted a year—providing ample time to take depositions or otherwise issue discovery requests. If Plaintiff was not diligent in the time allotted, that is her burden to bear. (*See* Doc. No. 27; *see also* Doc. No. 54 at n. 1 (saying "Plaintiff did not serve any written discovery, nor requested any depositions at any time before the discovery cut-off").) Plaintiff's one-paragraph request at the end of her Response does not explain why the discovery period provided insufficient time, and the Court does not see a reason on its own. Accordingly, to the extent Plaintiff seeks to wholly re-open discovery under Rule 16(b)(4), the request is denied.

Further, to the extent Plaintiff seeks certain targeted discovery under Fed. R. Civ. P 56(d), the request is also denied. Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

To obtain relief under Rule 56(d), the movant must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without

16

additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment. *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (citing *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010)).

Here, Plaintiff requests "additional time to depose Ms. O'Conner (the chair of the 2020 search committee) and Dr. Reddy" regarding her 2020 failure to hire claim. (Doc. No. 51 at 15.) In support of this request, Plaintiff merely argues, "Ms. O'Connor states in support of summary judgment that Plaintiff was not hired because she had purportedly made an offensive comment during her interview. Plaintiff has submitted a declaration indicating that this is the first time she has heard of such an accusation." (*Id.*) This is insufficient to obtain Rule 56(d) relief. Plaintiff has not explained how this information is "*essential* to justify [her] opposition," to the Motion. *See* Fed. R. Civ. P 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts *essential* to justify its opposition, the court may [grant Rule 56(d) relief]." (emphasis added)). Nor has she explained why this information could not have been discovered sooner or what steps she took to obtain this evidence. In other words, Plaintiff has not satisfied any of the requirements set forth by the Tenth Circuit in *Cerveny*. *See* 855 F.3d at 1110. Accordingly, Plaintiff's request must be and is denied. *See Bendinelli v. Metro. Prop. & Cas. Ins. Co.*, No. 1:17-CV-00978-KHR, 2018 WL 11025412, at *4–5 (D. Colo. July 23, 2018) (declining to grant re-open discovery under Rule 16(b)(4) and denying Rule 56(d) relief); *Carbajal v. Warner*, No. 10-CV-02862-CMA-KLM, 2015 WL 7450269, at *6–7 (D. Colo. Nov. 24, 2015) (the same).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment Pursuant to F.R.C.P. 56. (Doc. No. 48) is **GRANTED**. The Clerk of Court is directed to close this case.

Dated this 26th day of March, 2024.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge